Case 12-36-57 Donita Carmichael v. City of Cleveland et al. Argument not to exceed 15 minutes for appellant. 15 minutes to be shared by appellees. Mr. Murphy for the appellant. My name is Donald R. Murphy. I represent the plaintiff appellate in this case. Briefly to review the facts, Donita Carmichael was one of 11 women who was raped, kidnapped, and murdered by Anthony Sobel in the Sobel case. Now, prior to that, when she was discovered, Anthony Sobel had spent 15 years in prison on related sexual acts. When he was released as a sexual offender, he was supposed to register with the service department as a sexual offender, which he did. After registering as a sexual offender, he was supposed to periodically check in with the service department as a removal officer, which he did not. In that ensuing period of time, another woman was kidnapped by Anthony Sobel, and she was screaming out the window on Imperial Avenue and finally went to the police department. The prosecutors failed to take her case. Now, from that period on, Donita Carmichael was reported missing, but her family tried to report her missing. The family went to the city of Cleveland to report her missing. The city of Cleveland says, we can't do anything because we can't file a missing person report because she was not a member, a citizen of the city of Cleveland. She then went to the city of Warrensville, Warrensville Heights, where she was residing. Warrensville Heights says she'll turn up after she's finished smoking crack, and they refused to take a missing person report. How do you get from that though to a race allegation? I mean, the implication is, you know, she's a drug user, she'll turn up. How does that get you to a race allegation? Your Honor, that's exactly the point we're trying to do, because the case, the court submits this prior to the discovery. We never had a chance to get the discovery to prove that, because they dismissed it on a 12-6. It fell to the state of Cleveland, actually. At some point, didn't the court grant leave to you guys to file an amended complaint that never got filed? Did that happen? Although, Your Honor, we filed an amended complaint, but we never got the discovery because they dismissed it on a 12-6. So then, the family put together a search party, and they found Connie's vehicle on Pinsman Avenue in the city of Cleveland. Went back to the city of Cleveland to file a missing person report. They refused to do so. Now, this is the segue into my arguments. This habit of Connie was the first to be discovered. When we filed our complaint, our complaint was based on 42 U.S.C., 1981-1983, race discrimination. Failed to investigate. The court dismissed this on a 12-6. They said, you didn't have, you didn't file a claim of action. Now, when asked from the Cleveland Public Safety Director, he got dismissed. The health department, are you appealing those dismissals or not? Well, Your Honor, what we're saying is that we, we're saying the sheriff's department, the county sheriff's department, failed to follow up, but he did not register. We're saying, had they followed up, but he failed to register, maybe Connie and the rest of those 11 women, 10 women, could have been found properly. But getting to our argument, our first argument. Our first argument is saying that the trial court plagiarized and taking from the defendant's answer, the trial court, if you look in our brief, on page 13 of our brief, you will see our argument, the defendant's response to our argument, you'll see there's two on page 13. The defendant's argument on the top of the page, and you see the court's holding on the bottom of the page, and the court verbatim repeats the defendant's argument, verbatim, in holding, of your argument of discrimination. It looks like it's just one sentence. I'm sorry? It looks like it's just one sentence that you've underlined and folded on page 13. Yes, Your Honor, the part that's underlined, and you look at the part that's underlined on both statements is verbatim. Well, it changes the plaintiff's decision at the time. Carmichael, it is a fair recitation of what your factual allegation is, isn't it? But see, the top part is the defendant's, that's not ours, that's the defendant's. The top part is the defendant's. If you look at what the judge said. The judge copied the defendant's statement, and what we're saying, now, in my brief, I cited a lot of cases, but the important case I wanted to bring out is what this court, this Sixth Circuit Court, stated, and I won't read through the entire caption, but this court stated that the court has to do its own definitive investigation. They're saying, in this case, this court stated… Excuse me, you went through an analysis of the defendants, explained who they were, what the allegations were, and, you know, in the court you have the state of the fact allegations indicated that if anything, Tony Carmichael was discriminated against because of his drug use. That's right. I mean, how else do you say that? I mean, what's wrong with using that language? If that's the conclusion you reached. Well, Your Honor, because the case law says, including this court, when they cite a case where they, when they repeated the statement of the defendants, they even included the errors that was in the defendant's statement. In other words, the court is saying, you should do your own initial investigation. You can't just severely dismiss it based on what the defendant said. Just severely dismiss it. If the defendant says it, it must be true. That's plagiarism. Yeah, but because of what you, what you said the complaint was, is they told the family she'll come back when she's not high, whatever it was. Well, she's been smoking crack. Yeah, so I mean, that comes from the plaintiff. That's what they were told. That's what the family was told. Right, and that language would suggest drug use. So how else would the district judge say it? Well, Your Honor, what we're saying is that if we would have had the benefit of discovery, we could have shown that Winesville Heights, the city of Winesville Heights, did not treat the same way that white people come in. If a white person would come in and try to do a missing person report, regardless of whether they were smoking, they would have taken it. Did you allege that she was treated differently than other similarly situated drug users? Well, that's what my struggling is with. We're saying she'd be treated differently because of her race. We didn't get a chance to do that through discovery. Had we gone through discovery, we could have shown by the records of Winesville Heights how they treated other people who tried to file a missing person report. The court dismissed it on 1286. There was a stated claim. We never got that far. So that's on our first argument as far as plagiarism. The big problem is if your complaint says that she was treated differently because of her race, you have to have a basis under Rule of Civil Procedure, Rule 11, for making that statement. Yes. So what was the basis that was alleged in the complaint for the conclusion that you're making that she was treated differently because of her race? Well, Your Honor, we didn't go through all these statements. The police told the family this is racial. We didn't go through all that. But we're saying that if we had an opportunity for discovery, we could have shown through their files how other missing people were treated who came to report missing. But you're saying that there were other statements that the Winesville Heights police made to your client's family? Yes. That showed a racial bias? Yes. But you didn't put that in your complaint? No, we didn't. You knew that because you got it from your client's family. Yeah, because at that point, we were just taking their statements. We needed the opportunity to go and do our discovery to match us all that. But you knew your family. The family is your client. Yes. So you could talk to them about discovery. Yes, and we did. But you didn't put that in your complaint? Oh, no, we didn't put it. There was a lot of stuff she was told. Her mother was told. Was she told anything that would implicate race? Because the part about, oh, sure. She'll come back when she finishes smoking crack. You put that in your complaint. That's kind of damning, and you put it in your complaint. If it was something that said, oh, we only take complaints from white people, you would have put that in the complaint, wouldn't you? Yes, well, it wasn't that obvious. I didn't say that. But you have to say something. You did your claim for relief. Doesn't even, as I read it, correct me, doesn't even affirmatively say, and they would have taken the complaint if she had been white. You just say it resulted in the deprivation as a result of discrimination. But you don't tie it, as I read it, to a policy or a statement. Am I wrong? What's your best statement in the complaint? Yes, you're right. We did not put that in the complaint. So is that the place to look, what I just read, and say clear incident of racial discrimination? Yes. You know, if we would have had time to discover it, the police officer, and I think what I'm going to say, I'll say the police officer told her mother that we're not going to get out of that dangerous area, and you better not either, or we're going to arrest you. But that's something that you now say that the mother knew at the time. You just didn't put it in. The mother suffered a stroke. So, yes, she did put it in at that time. The daughter had a heart attack. The mother suffered a stroke. So all this was happening all at the same time because of all the stress. The complaint was filed how long after those events? In early 2011? Yes. And the events about the events, I guess they actually finally arrested him in 2010. So turning up the body in 2010. Yes. She disappeared at eight, right? Yes. So the sort of immediate search for her happened in late 2008? Yes. And her complaint was filed in 2011, early 2011? Yes. Okay. Your Honor, our time is up. I'd like to go to my next argument. Your Honor, the defendants and, in part, the misconstrued people who were saying, they wouldn't just long to discover about the Cheney case and the fact that the police department has no authority or obligation to protect a person from violent, vicious acts. They cited the Cheney. We're not talking about the Cheney. That was not our case. We're saying under the due process clause, the people protection clause of the Constitution, the police had an obligation to investigate. We're not saying protection from vicious acts under the Cheney case. They have a duty to investigate. You know about our case of Gazette versus City of Pontiac. Yes. I have cited that. I have that. Your facts are awful, there's no doubt, but Gazette is pretty awful as well and no liability was found there. How do you deal with that? I have that case, Your Honor. That's where they locked the old lady in the trunk when she died of dehydration. In this court, this court said in the other case that Connie Carmichael was selectively denied protective services to the city defendant on the basis that she was an African-American in violation of people protection due process clause. Cited this case, this court. And what is it you're reading from there? Just my brief. Oh, your brief. Oh, yes. Counsel, I think your time has expired. Okay, I'd like to reserve five minutes. Okay. Okay. He did not reserve any time, Your Honor. So you've used all your time, Counsel. Okay. All right. Here will be the answer series. May it please the Court. My name is Frank Skelton. I represent the city of Warrensville Heights and the individual of Warrensville Heights, Officers Jelenic, Price, and Libra. I'm sharing time. I'll be taking the first seven minutes. I'm sharing time with the attorneys for the Cleveland-related defendants. This case is narrowed down. There's been no claims against the individual defendants here. They weren't argued below. They weren't argued on appeal, and they weren't heard here today, nor oral argument. So those are waived. There was an admission there was no substantive due process claim expressly abandoned by opposing counsel here in oral argument and throughout the briefing. The only claim alleged against Warrensville Heights is for equal protection, and that necessarily has to be a modal claim. So the factual allegations within the complaint must demonstrate a constitutional violation. They must identify a policy, custom, or practice, and then demonstrate direct causal link between the policy and the injury alleged. First, there are no factual allegations regarding that the plaintiff was treated any differently from similarly situated individuals of a different race. And I think that there was an express admission by opposing counsel here. He seemed to say that he didn't have the opportunity to engage in a discovery, which is really not the proper focus of a 12C complaint evaluation or promotion evaluation. He did say that he wasn't given the opportunity to file an amended complaint, or he did file an amended complaint. I think what happened there is he requested the ability to file an amended complaint, but never filed it, and then he asked for a second extension to file an amended complaint, which was ultimately denied. So the complaint properly before this court is the original complaint. Second, there is no factual allegation that there was a policy or practice of discriminating against African Americans for any basis in the complaint. There was no allegation of facts that would plausibly lead anyone to believe that the city ignored a history or custom or practice of discrimination by its officers in accepting missing persons report for any other reason. And there's no allegation, no factual allegation, that anybody else has experienced... ...delay in processing a missing person report. And finally, I think that there is... I think there's some serious problems with direct causation as well. Here, the conduct of a serial killer, Anthony Sowell, directly caused the death of Connor Carmichael, and I think it's far too remote to link that up, and certainly there hasn't been that express allegation in the complaint to make that connection. Didn't the complaint allege that they tried to make the report to Warrensville Heights before actually telling you that Carmichael was actually killed? Am I not reading or remembering the complaint properly? I think the theory is that if the city of Warrensville Heights had accepted the complaint when they attempted to make it, that there could have been evidence made by the killer and to protect her. I think that is... I mean, I think that's the theory that they base that on. And my point with the... I don't think it overcomes the other two failings under Monell regarding the constitutional violation and the identity of a custom or practice, but I just point out that I think that that is... There's a lot of speculation and conjecture that that could possibly have happened in this circumstance, but I think that that is their theory. I'd like to point out that one of the primary arguments, it seems, is a claim of judicial plagiarism. I don't think that... I'm not aware of any case law that there's a pro se prohibition on using the citation or law or factual recitation of a party as being per se a reversible error. And, I mean, ultimately, you're appealing the judgment of the trial court and not the opinion itself. I don't think there was anything incorrect that was placed in the opinion that reflected the complaint correctly. The complaint in paragraph 19 had the allegation that the Warrensville Police Department refused to take a missing-person statement saying that she will show up after she finishes smoking crack. So suppose that the complaint had then had the allegation that in Warrensville Heights this statement is only made with respect to African-American families. Would that be enough to extend 12b6 or 12c1? I don't think so. It's stated in a way you're hypothetical. I think that that still may be too cursory. I think there would have to be some specific allegation of fact, you know, citing that that actually occurred, in other words. How would a family living in a city be able to get that kind of evidence to put into a complaint if they haven't? You know, you're just a regular family, but all of a sudden their family member has had this horrible thing happen to them. Well, I think once they've retained their attorney, you know, getting legal counsel and obtaining public records requests is one way to do it, I think. How would you find that out, that a city has a policy, an informal policy, but it actually did have such an informal policy, of saying, we're not going to accept reports of a certain kind, and that usually is applying to people of a certain race? Yeah, I mean, to be honest, I don't think that was never an election in the complaint, but how would you go about doing that? I think through public records requests, you'd probably be bringing enough information, or interviewing other people who had that. On any basis, you might say, at least here is one report that they did take from a crack-smoking white woman. Is that something that would take it beyond a mere conclusory statement that is set forth in the complaint? Here's seven minutes or another. Thank you very much. Your Honor, if you may please report. My name is Agatha Radigusta, and I represent the city of Cleveland in this matter. Now, Appellate claims that he is not talking particularly about the DeShaney case in this matter, but I would like to address that specifically, because although he claims such, the facts in this case,  clearly inform the way in which the city of Cleveland and the city of Cleveland implicates the DeShaney case. Now, in particular, I'd like to focus on the city's alleged duty and failure to act. Now, the law is clear in that there is absolutely no duty to provide protective services, and in this case, the city's failure to act does not, in fact, implicate liability. Now, this case itself, very recently, in April of 2013, in the Langdon v. Skelly case, also stated that there is, in fact, no obligation on states to render aid, but rather to protect people from the state. Now, the central question in determining whether a state action could, in fact, increase risk of harm to an individual is whether the individual was safer before the state action than she would have been before. Now, in this case, not only was there no affirmative act, because, as the court stated in Langdon, a failure to act does not satisfy the affirmative act crime, but Tony O'Connor, I felt, was absolutely no less safe before than after. In fact, there would have been no guarantee that filing a report would have allowed anybody to find her or to realize that she was in any kind of danger from Anthony Sowell. Now, maybe... Is there any indication about when she actually was killed or when her body was found? Your Honor, I believe the bodies were found around October and November of 2009. And hers, I mean, she was... There was nothing other than she was one of the ones that was found. Exactly, and I believe she was actually the first individual to be found. Am I remembering correctly something from one of the documents in this case that there was at least a suggestion that she died relatively quickly, relatively close in time to when the bodies were actually discovered? I believe so, Your Honor, but I'm not definitely aware of that. What I do know is that the facts that the appellant had alleged in the complaint regarding Anthony Sowell's release was around November of 2008, and the bodies were subsequently discovered almost a year later, in October and November of 2009. Now, in addition to these arguments, the plaintiff must also show that the state action, the alleged state action, must place that person specifically at risk as opposed to the general public at large. Therefore, they must show that the state knew or they should have known that the action specifically would have endangered the plaintiff. Now, here, yes, perhaps releasing, you know, this individual, Mr. Sowell, would have created a danger in a general sense, but the danger could have never been anticipated to be specifically towards Ms. Carmichael. And furthermore, there is no causal connection here. The court in Lincoln also stated that you must show a connection between the state action and the private act of violence as such by identifying that the action was so egregious that it was considered arbitrary in the constitutional sense and would have shocked the conscious. That is beyond mere negligence. Now, in this case, we don't believe that refusing to take a missing persons report because an individual is not a resident of a particular city and or releasing Anthony Sowell due to insufficient evidence constituted action that could be considered so egregious as to shock the conscious. Furthermore, Your Honors, liability under Monell cannot also be established in this case because appellant has missed the critical point that in order to succeed on liability against municipality, two things must be proved and alleged. Number one, that a right was actually violated. Number two, that a policy or a custom was the moving force behind the violation. Now, here he does allege something in regards to a straight release and then died later. Now, not only has he failed to allege how this is an ongoing policy, he has admitted in the complaint that a straight release, in fact, was not... The plaintiffs who handled the arrest of Anthony Sowell did a number of things. They went to the crime scene, they talked to witnesses, they took photos of Anthony Sowell while he was in the holding cell, and they met with the city prosecutor all before deciding that there was insufficient evidence to actually initiate a prosecution against Mr. Sowell. Thus, the city investigated the situation before they even decided that he could have been released. And even assuming hypothetically that this was a policy, again, an appellant would have to prove that a right was violated. And because she has not proved that there was a due process or a legal protection violation, no liability cannot be established. Counsel, I think your time has expired. Thank you, Your Honor. One more time for others to speak. How much do you have? Too much. Good morning. I'm Gary Singletary. I'm here for the four Cleveland police detective officers who are also named in the complaint. Basically, the two minutes I have reserved to address is the issue of the grant of immunity to these officers that was accomplished by Judge Nugent in his opinion. These officers have protection through Revised Code Section 2744-03-86, and this particular section allows that an employee is immune unless he's manifestly outside the scope of his employment, that he acts in a malicious manner or bad faith or in a reckless, wanton way, or that civil liability is imposed by a particular Revised Code section. This would be immunity only for the state law? That's right, Your Honor, because in reading the complaint and reading Mr. Murphy's briefs throughout, the 1981 and 1983 allegations are just not pled against the individual defendant officers. I'll rest on the brief with regards to our analysis of those claims that they were applied to the officers. But in this case, at most, if you look at Count 4, which is a state claim dealing, the most that's said there is that paragraph 45, that defendants 1 through 16 were negligent. The four police officers that I'm representing were actually, I believe they're 15 through 18, so two of the officers aren't even included by definition of who's at risk in Count 4, and that's Lieutenant Thalmiller and Sergeant McMahon. With regards to the other officers, as Ms. Houston just described, the only allegations are that they met with individuals, they obtained written statements, medical releases, they went to the crime scene, they talked to witnesses, and they met with the prosecutor. These are sex crime unit detectives, Your Honor. They're not missing person report people or anything like that. They don't set policy for the city of Cleveland. We believe the dismissal was based on immunity, and that's why it was with the president. Thank you. Good morning, Your Honor. I drew the short straw. I'll get to that in one minute. I represent Assistant City Prosecutor Lorraine Coyne. I believe that all claims against her have been abandoned. I did a word search on the merit brief of appellant, and the name Coyne appears exactly twice in that brief, once in the proof of service and again in the citation to a case called Coyne v. American Tobacco. That is about as perfunctory as an argument I can imagine. I believe that all her claims have been abandoned under the case law cited in our brief. Lorraine, likewise, barely made it onto the dance card at the district court level. The only complaint against her was that she was at all times material in Assistant City Prosecutor and that she determined that there was insufficient evidence to charge Anthony Sowell with the matter at hand. That's it. Those are the only allegations against her in the complaint. The district judge correctly granted absolute prosecutorial immunity. Thank you.